# Illinois Official Reports

## Appellate Court

---

### *Litvak v. Black*, 2019 IL App (1st) 181707

---

| | |
|---|---|
| Appellate Court Caption | KATHERINE LITVAK, Plaintiff-Appellee, v. BERNARD S. BLACK and SAMUEL BLACK, as Trustees of the Supplemental Needs Trust for the Benefit of Joanne Black, Dated December 19, 1997; BERNARD S. BLACK and SAMUEL BLACK, as Trustees of the Irrevocable Trust for the Benefit of the Issue of Renata Black, Dated December 19, 1997; and BERNARD S. BLACK and SAMUEL BLACK, as Trustees of the Joanne Black 2013 Trust Agreement, Dated March 22, 2013, Defendants-Appellees (Jeanette Goodwin, as Court-Appointed Successor Conservator for Joanne Black, Intervenor-Appellant). |
| District & No. | First District, Sixth Division<br>No. 1-18-1707 |
| Filed<br>Rehearing denied | November 22, 2019<br>December 19, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-L-9743; the Hon. James E. Snyder, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded. |
| Counsel on Appeal | Peter Stasiewicz, of Arcturus Law Firm, of Chicago, for appellant. |

Eugene E. Murphy Jr., David F. Hyde, and Daniel J. Scheeringa, of Murphy Law Group, LLC, of Chicago, for appellee Katherine Litvak.

No brief filed for other appellees.

Panel                  PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Cunningham and Connors concurred in the judgment and opinion.

## OPINION

¶ 1      Unsatisfied with his deceased mother's decision to leave significant assets to his sister, Joanne Black, who suffers from a long-standing mental illness, Bernard S. Black devised a scheme to gain control of Joanne's finances as her court-appointed conservator. Letting the Colorado probate court that appointed him to that position believe he would deposit certain payable-on-death assets left directly to Joanne into a trust their mother had established for Joanne's continued care, Mr. Black instead caused the bulk of those funds to pass through his mother's estate, where one-third of them—over $1 million—was redirected to a trust established for the benefit of Mr. Black and his children, with only the remaining two-thirds going to Joanne.

¶ 2      When informed of these events, the Colorado court ordered a forensic accounting, held a multiday evidentiary hearing, and ultimately concluded that Mr. Black had misled the court, breached his fiduciary duties, and committed civil theft. Mr. Black was enjoined from accessing any trust funds belonging to his sister and ordered to pay statutory damages of three times the amount he stole from her. Mr. Black thus found himself unable—though not for want of trying—to access the funds held in two trusts established for Joanne's benefit or in the third trust, set up for the benefit of Mr. Black and his children, to which funds intended for Joanne had been redirected.

¶ 3      It is then that Mr. Black's wife, plaintiff Katherine Litvak, initiated this lawsuit, in which she asserts that all three trusts are jointly and severally indebted to her for hundreds of thousands of dollars. Ms. Litvak failed to notify Joanne's cousin, Anthony Dain, who served as cotrustee for two of the trusts, or Jeanette Goodwin, Joanne's new court-appointed conservator, of this lawsuit. One week after the suit was filed, Ms. Litvak, Mr. Black, and Mr. Black's son Samuel (also a trustee) asked the circuit court to enter an agreed judgment against the trusts for the full amount of the claim. Upon learning of these events, Ms. Goodwin sought to intervene and vacate the judgment. The circuit court granted her request with respect to the two trusts for which Joanne was a beneficiary but allowed the judgment to stand as to the third trust because that trust benefitted only Mr. Black and his children.

¶ 4      For the reasons that follow, we affirm in part and reverse in part. We conclude that it was an abuse of discretion not to vacate the agreed judgment in its entirety.

## I. BACKGROUND

The relevant events preceding the filing of this litigation were set out quite recently by this court in an opinion affirming the denial of Mr. Black's motion to vacate the filing of a foreign money judgment: *i.e.*, the Colorado court's award of treble damages in favor of Joanne and against Mr. Black. Those facts bear repeating here:

"Defendant and his sister Joanne Black are the children of the late Renata Black, who died in May 2012. Renata's will provided that her estate assets would be divided into two trusts. Two-thirds of Renata's estate would be distributed to a 'Supplemental Needs Trust' for the benefit of Joanne, who had been diagnosed with schizophrenia. One-third of Renata's estate would be distributed to a trust for defendant [Mr. Black] and his children. Defendant was appointed as the executor of Renata's estate, the bulk of which consisted of accounts holding nearly $3.5 million. Defendant discovered that, before Renata's death, she designated Joanne as the payable-on-death beneficiary of some of Renata's accounts, resulting in the assets in those accounts passing directly to Joanne rather than to the Supplemental Needs Trust.

At the time of Renata's death, Joanne was homeless in Colorado. In December 2012, defendant initiated a proceeding in the Denver Probate Court seeking appointment as conservator of Joanne's estate because her 'mental illness interferes with her ability to manage her assets and income.' The probate court appointed an attorney and a guardian *ad litem* for Joanne and subsequently appointed defendant as Joanne's conservator. According to defendant, Joanne's attorney and the guardian *ad litem* both expressly consented to defendant's request that, as conservator, he be permitted to disclaim Joanne's interest in Renata's payable-on-death accounts. After a hearing, the probate court specifically authorized defendant '[t]o disclaim [Joanne's] interest as beneficiary under all payable on death or transferable on death accounts *** owned by *** Renata.' Defendant executed the disclaimer, which resulted in the assets in the payable-on-death accounts flowing through Renata's will, with two-thirds going to Joanne's Supplemental Needs Trust and one-third going to the trust for the benefit of defendant and his children [the Issue Trust].

In February 2015, Joanne's counsel filed a motion in the probate court seeking to void the disclaimer. The motion asserted that defendant breached his fiduciary duties to Joanne by failing to disclose the effect of the disclaimer on Joanne's interest in the nearly $3.5 million in assets from Renata's accounts. At a status conference on the motion, the probate court ordered an independent accounting of Joanne's assets, scheduled an evidentiary hearing, and 'advised the parties that it would consider whether "disgorgement or unwinding of fiduciary actions" was appropriate.' [Citation.] On the day before the evidentiary hearing, the guardian *ad litem* filed a motion alleging that defendant's conduct amounted to civil theft under Colorado law and requested that the probate court award treble damages pursuant to Colorado's civil theft statute. [Citation.] After the evidentiary hearing, the probate court concluded that defendant breached his fiduciary duties to Joanne while serving as the conservator of Joanne's estate by converting roughly $1.5 million of her assets for his own benefit. The probate court found that plaintiff was required to reimburse Joanne's estate for the amount that he converted and that damages were trebled under Colorado's civil theft statute,

resulting in a judgment of nearly $4.5 million. [Citation.]" *Conservatorship Estate of Black v. Black*, 2019 IL App (1st) 181452, ¶¶ 4-6.

The Colorado Court of Appeals subsequently affirmed the Colorado probate court's order in all respects. *Id.* ¶ 2 (citing *Black v. Black*, 422 P.3d 592 (Colo. App. 2018), *cert. denied*, No. 18SC419, 2019 WL 2178077 (Colo. May 20, 2019)).

¶ 7    On January 29, 2016, Mr. Black sued Joanne in the federal district court for the Northern District of Illinois, seeking a declaration that he was free to administer the Irrevocable Trust for the Benefit of the Issue of Renata Black, Dated December 19, 1997 (Issue Trust), "without restraint." See Black v. Black, No. 1:16-cv-1763 (N.D. Ill.). Mr. Black acknowledged both an April 2, 2015, order of the Colorado court stating that "all *** assets related to [Joanne Black] are frozen" and a January 13, 2016, order in a guardianship action in New York that restrained Mr. Black from making any distributions from the Issue Trust. He asserted, however, that he and his children were the only beneficiaries of the Issue Trust, that Joanne was not and never had been a beneficiary of that trust, and that the Issue Trust "contain[ed] no assets of [Joanne]."

¶ 8    When the Colorado court learned of this new litigation the following month, it characterized Mr. Black's complaint for declaratory relief as "rife with inaccuracies." It reiterated that Mr. Black had "no rights to any of the funds contained within the Issue Trust that were transferred or derived from Renata Black's [payable-on-death] accounts" and that Mr. Black's complaint essentially asked the district court "to allow him to spend funds that he misappropriated from Joanne Black on his attorney fees and costs to maintain the litigation he [had] initiate[d] against her and his cousins." The court granted Mr. Dain's request to use funds from the Supplemental Needs Trust for the Benefit of Joanne Black, Dated December 19, 1997 (Supplemental Needs Trust), to hire counsel to defend Joanne in the declaratory action.

¶ 9    Noting that she had been in contact with the judge in the guardianship action pending in New York, the Colorado judge stated that, consistent with the New York judge's order enjoining Mr. Black from dissipating any of Joanne's assets, she would continue to enter orders "to prevent wasting of Joanne Black's funds and to prevent further wrong-doing."

¶ 10    Before concluding her order, the Colorado judge had this to say about Mr. Black and Ms. Litvak:

> "Bernard Black and his current wife both testified before this Court that they are law professors at Northwestern University in Chicago, Illinois. As such, each of these individuals has an enhanced duty for full and complete candor to the Court and to conduct themselves and this matter with dignity becoming judicial officers and professors. The taking of his sister's funds, the multiple suits initiated by Mr. Black against his family members, the inaccuracies in his pleadings before this court and his apparent refusal to accept the changes his mother made to her estate plan are absolutely appalling and are not in keeping with his status as a law professor."

¶ 11    The case in the Northern District of Illinois was, according to filings made in this case, dismissed with prejudice in July 2016, with the court determining that it did not have personal jurisdiction over Joanne.

¶ 12    On September 26, 2017, Ms. Litvak initiated the present litigation by filing a three-count complaint for repayment against, respectively, the Supplemental Needs Trust, the Issue Trust, and the Joanne Black 2013 Trust Agreement, dated March 22, 2013 (2013 Trust)—a trust established by Mr. Black while purporting to act as Joanne's conservator. Ms. Litvak named

as defendants Mr. Black and his son (her stepson), Samuel Black, in their capacities as trustees of each of these trusts. She alleged that, pursuant to a demand note dated October 1, 2016, and amended December 21, 2016, the trusts were jointly and severally indebted to her for a total of $376,464.88, plus over $18,000 in interest and $13,000 in legal fees and costs. Ms. Litvak moved for entry of an agreed judgment on October 3, 2017, and on October 25, 2017, the circuit court granted her motion and entered the judgment. Ms. Litvak began collection proceedings on November 7, 2017.

¶ 13 Shortly after it was entered, Mr. Dain learned about the agreed judgment and also learned about a similar agreed judgment in an action initiated by Ms. Litvak's cousin (see Dal v. Black, No. 17 L 9744), who also claimed to have loaned the trusts hundreds of thousands of dollars. Mr. Dain filed a motion to intervene and to vacate the agreed judgment that Ms. Litvak had obtained. Mr. Dain informed Ms. Goodwin about the agreed judgment and, on November 27, 2017, Ms. Goodwin also sought to intervene on Joanne's behalf and to join and adopt Mr. Dain's motion to vacate the agreed judgment.

¶ 14 The circuit court held a hearing on the motions to intervene and vacate the judgment on February 16, 2018. Ms. Litvak insisted that, because Mr. Dain was not a trustee of the Issue Trust and Joanne was not a beneficiary of the Issue Trust, neither Mr. Dain nor Ms. Goodwin had any ability to bring a motion to vacate the agreed judgment with respect to that trust. At the very least, Ms. Litvak argued, "the issue trust judgment should remain in effect regardless of what [the court did] with the other two trusts." Ms. Goodwin argued in response that there was only money in the Issue Trust from which Ms. Litvak's judgment could be paid because Mr. Black stole it from Joanne and laundered it through their mother's estate, and that Joanne's well-documented interest in those funds would be adversely affected if the agreed judgment, which had been entered into without any notice to Joanne, was allowed to stand as to the Issue Trust.

¶ 15 The circuit court denied Mr. Dain's motion to intervene, finding that the Supplemental Needs Trust and the 2013 Trust were already present and represented as parties, through the presence of Bernard Black and Samuel Black, as trustees of those trusts. However, the court granted Ms. Goodwin's motion to intervene, finding that she had "made at least a *prima facie* showing" that Joanne's interests were "materially affected by these proceedings."

¶ 16 The court then granted the motion to vacate, seemingly without limitation:

"[THE COURT]: Having intervened, the Conservator for Joanne may do anything that an intervening party in a lawsuit may do.

In this case, it seeks to vacate the judgment within 30 days, and that motion is granted.

That brings you to just the status quo of the lawsuit at its beginning; a claim by Katherine Litvak against these various Defendants. These Defendants have elected to not contest summary judgment. They haven't answered otherwise, right?"

¶ 17 A moment later, however, the court seems to have had a change of heart, interrupting a discussion regarding the timing for responsive pleadings with the following amended ruling:

"THE COURT: And then it is the case that the judgment against the issue trust stands.

She's not—she can't intervene for Joanne in that regard."

¶ 18     Counsel for Ms. Litvak seized on this notion, insisting that the Colorado court's decision not to unwind the transactions it had condemned but instead to award Joanne money damages against Mr. Black precluded Joanne from asserting any interest over the funds held in the Issue Trust. The circuit court agreed, stating repeatedly that Joanne was "not a part of" the Issue Trust and any interest she had in the funds that were moved to that trust "doesn't make her a beneficiary." In the court's view, the proper avenue for Ms. Goodwin to assert Joanne's interest in the funds held in the Issue Trust was a collection proceeding. When Ms. Goodwin pointed out that there would be nothing to collect if the agreed judgment in this case was upheld and the funds in the Issue Trust were dissipated, the court stated "I can't tell you what kind of options you might have" but assured her there were "other options."

¶ 19                                    II. JURISDICTION

¶ 20     On February 16, 2018, the circuit court granted in part and denied in part Ms. Goodwin's motion to vacate the agreed judgment. On July 9, 2018, the court found, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), no just reason to delay enforcement or appeal of that decision. Ms. Goodwin timely filed her notice of appeal on August 8, 2018. We have jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 21                                    III. ANALYSIS

¶ 22     On appeal, Ms. Goodwin argues it was an abuse of discretion for the circuit court to vacate the agreed judgment in favor of Ms. Litvak with respect to the Supplemental Needs Trust and the 2013 Trust but to let the judgment stand as to the Issue Trust.

¶ 23     Section 2-1301(e) of the Code of Civil Procedure (Code) provides that a circuit court "may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable." 735 ILCS 5/2-1301(e) (West 2016). Whether to grant or deny a motion under this section "is within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of discretion or a denial of substantial justice." *Jackson v. Bailey*, 384 Ill. App. 3d 546, 548 (2008). A court abuses its discretion "where no reasonable person would take the position adopted" or where the court "acted arbitrarily or ignored recognized principles of law." *Id.* at 548-49.

¶ 24     Ms. Goodwin first asserts that the circuit court should have granted her motion to vacate in its entirety because the entire agreed judgment in this case was the product of fraud or collusion. We agree. Our supreme court has made clear that agreed judgments entered into through litigation that is not truly adversarial but collusively brought for the purpose of having such a judgment entered by a court of law are presumed to be collusive and fraudulent and may be challenged as void by adversely affected third parties. *Green v. Hutsonville Township High School District No. 201*, 356 Ill. 216, 221-22 (1934).

¶ 25     In *Green*, for example, our supreme court held that "whenever a judgment is procured through fraud and collusion for the purpose of defrauding some third person, such third person may show collaterally the fraud and collusion by which the judgment was obtained and escape the burdens and injuries thus thrust upon him." *Id.* It went on to explain that "[i]f a suit is devised for the purpose of having a certain judgment entered, it will not be binding upon the public or those who are not parties to the scheme adopted for that purpose." *Id.* at 222; see also 23 Ill. L. and Prac. *Judgments* § 117 (2019) (noting that "[f]raud or collusion in the

- 6 -

procurement of a judgment constitutes a sufficient ground for opening, vacating, or setting aside such judgment at any time" and that "[c]ourts have inherent power to set aside their own judgments obtained by fraudulent collusion between the parties").

¶ 26    Ms. Litvak's sole response to this argument is that Ms. Goodwin did not allege sufficient facts to establish fraud or collusion in the circuit court. In *City of Chicago Heights v. Public Service Co. of Northern Illinois*, 345 Ill. App. 393, 400 (1952), our supreme court did acknowledge that it is not enough for one challenging an agreed judgment to simply conclude that it was the product of a "friendly" suit. But the court went on to say that where the facts demonstrate that a suit was "an adversary proceeding only in form" and the resulting judgment was "not entered on a hearing on the merits, but by the default, acquiescence and tacit consent" of the parties, the "necessary inference" is that the judgment was "collusive and fraudulent." *Id.* at 400-01. In that case, the defendant was a municipality sued for repayment on various contracts it knew or should have known were invalid because they resulted in a level of indebtedness the municipality was prohibited by statute from taking on. *Id.* at 395-97. Rather than assert this meritorious defense, the municipality acquiesced to a default judgment. *Id.*

¶ 27    Here, the trustees, as defendants to Ms. Litvak's suit, never answered her complaint and within one week agreed to a judgment against the trusts for the full amount requested. The judgment they agreed to was actually against all three trusts, including two trusts for which Joanne was the only beneficiary. The motion to vacate and its various attachments, including the persuasive orders of other courts detailing the conduct of Mr. Black and Ms. Litvak in related litigation and Joanne's clear interest in all of the funds at issue, are detailed allegations from which we can infer that the agreed judgment in this case, like the judgment in *City of Chicago Heights*, was improper and that Joanne's interests were "adversely affected" by this judgment in Ms. Litvak's favor, as it concerned all three of the trusts.

¶ 28    The factors we consider when determining whether substantial justice is achieved through the grant or denial of a motion for relief from judgment under section 2-1301(e) also weigh strongly in favor of vacating the agreed judgment in its entirety. Those factors include "[the moving party's] diligence or the lack thereof, the existence of a meritorious defense, the severity of the penalty resulting from the order or judgment, and the relative hardships on the parties from granting or denying vacatur." *Jackson*, 384 Ill. App. 3d at 549.

¶ 29    Here, the record establishes that, although given no notice of these proceedings, Mr. Dain and Ms. Goodwin moved quickly to protect Joanne's rights, filing their motion within 30 days of entry of the agreed judgment.

¶ 30    And the circuit court in this case clearly believed that Ms. Goodwin had "made at least a *prima facie* showing" that Joanne's interests were "materially affected by these proceedings." Recovery of the funds the Colorado court found Mr. Black stole from Joanne may certainly— as the circuit court in this case noted—require separate collection proceedings. But that does not prevent Ms. Goodwin from protecting Joanne's interests in this action to prevent further wasting or dissipation of those assets that Mr. Black strategically moved into the one trust established by his mother that was not set up for Joanne's benefit. In our view, the motion to vacate raises meritorious arguments for why—her lack of beneficiary status notwithstanding— the funds in the Issue Trust that Mr. Black and Ms. Litvak seek access to belong to Joanne.

¶ 31    This brings us to the severity of the penalty resulting from the judgment and the relative hardships on the parties from granting or denying it. As Ms. Goodwin's counsel pointed out at argument in the circuit court, if the funds in the Issue Trust are distributed, they may never be

recovered. Conversely, if the agreed judgment is vacated in its entirety, Ms. Litvak will still have an opportunity to present her own claim to those funds. The import of this opinion is simply this: that determination should be made only after the court has fully considered Joanne's competing interest in those funds.

## IV. CONCLUSION

For the reasons stated above, the circuit court's order of February 16, 2018, is affirmed in part and reversed in part. The agreed judgment entered on October 25, 2017, is vacated in its entirety. This case is remanded to the circuit court for a decision on the merits of Ms. Litvak's claims, with Ms. Goodwin's full participation in this suit on Joanne's behalf.

Affirmed in part and reversed in part.

Cause remanded.